IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Marian A. Spencer, et al. | : | Case no.      1:04CV00738 |
| | : | |
| Plaintiffs | : | (Hon. Susan J. Dlott) |
| | : | |
| v. | : | MEMORANDUM OF DEFENDANTS |
| | : | HAMILTON COUNTY BOARD OF |
| J. Kenneth Blackwell, et al. | : | ELECTIONS, MEMBERS TIMOTHY |
| | : | BURKE, MICHAEL BARRETT, TODD |
| Defendants | : | WARD, DANIEL RADFORD. AND |
| | : | JOHN WILLIAMS, DIRECTOR, IN |
| | : | OPPOSITION TO PLAINTIFFS' |
| | : | MOTION FOR A TEMPORARY |
| | : | RESTRAINING ORDER |

MEMORANDUM

I.      BACKGROUND

Plaintiffs are residents of Cincinnati Ward 13, Precinct H contesting the placement of

"challengers" within their precinct under the provisions of State of Ohio election code, Revised

Code Title 35, specifically under O.R.C. 3505.21. (Complaint ¶¶ 1, 3).  They claim to be acting

on behalf of a class of African American voters throughout Hamilton County.  (Complaint ¶ 3).

The defendants are the Secretary of State of Ohio "Secretary"), who by law, is the chief

elections officer in the state, O.R.C. 3501.04, the members and director of the Hamilton County

Board of elections ("Board") who are appointed by the Secretary, O.R.C. 3501.06, and who

serve as his representatives in Hamilton County, *id,* and Michael Barrett, the Chairman of the

Hamilton County Republican Party.

Plaintiffs further claim that the Board has designated one of the four bi-partisan precinct

officials as a presiding judge in the precinct in which they reside and intend to vote.  (Complaint

¶ 13).  Plaintiffs claim that this presiding judge is a member of the Republican party.  *Id.*  They

assert generally that the state challenge procedure outlined in Chapter 3505 of the Revised Code

and specifically the Republican Party's proposed use of it in the upcoming elections is designed

to "deny, deter, and delay African Americans form [sic] exercising their fundemental right to

vote." (Complaint, generally and ¶ 40).

II.    ARGUMENT

   a.    Plaintiffs Lack Standing to Bring This Action

   The standing requirement limits federal court jurisdiction to actual controversies so that

the judicial process is not transformed into " 'a vehicle for the vindication of the value interests of

concerned bystanders.' " *Coal Operators & Assocs. v. Babbitt,* 291 F.3d 912, 915-916 (6th Cir.,

2002), quoting *Valley Forge Christian College v. Americans United for Separation of Church &*

*State, Inc.,* 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).   A plaintiff bears the

burden of demonstrating standing and must plead its components with specificity.  *Id.*

   Article III of the United States Constitution provides that parties attempting to invoke

federal jurisdiction must allege an actual case or controversy.  *O'Shea v. Littleton*,  414 U.S. 488

(1973).   In order for a case or controversy to exist, Plaintiff  "must allege some threatened or

actual injury resulting from the putatively illegal action before a federal court may assume

jurisdiction."  *Id.* at 494, quoting: *Linda R.S. v Richard D.*, 410 U.S. 614, 617 (1973).  *O'Shea*

provides:

> There must be a "personal stake in the outcome" such as to "assure that
> concrete adverseness which sharpens the presentation of issues upon which the
> court so largely depends for illumination of difficult constitutional questions."
> *Baker v. Carr,* 369 U.S. 186, 204 (1962). Nor is the principle different where
> statutory issues are raised. *Cf. United States v. SCRAP*, 412 U.S. 669, 687 (1973).
> Abstract injury is not enough. It must be alleged that the plaintiff "has sustained
> or is immediately in danger of sustaining some direct injury" as the result of the
> challenged statute or official conduct. *Massachusetts v. Mellon*, 262 U.S. 447, 488
> (1923). The injury or threat of injury must be both "real and immediate," not
> "conjectural" or "hypothetical." *Golden v. Zwickler*, 394 U.S. 103, 109-110
> (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273
> (1941); *United Public Workers v. Mitchell,* 330 U.S. 75, 89-91 (1947). Moreover,
> if none of the named plaintiffs purporting to represent a class establishes the

requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class. n3 [***683] *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962); *Indiana Employment Division v. Burney*, 409 U.S. 540 [**676] (1973). See 3B J. Moore, Federal Practice, para. 23.10-1, n. 8 (2d ed. 1971).

418 U.S. 494.


*O'Shea* involved a class of African American consisting of persons who participated in boycotts of local merchants and other activities designed to achieve racial equality.  They sued a county court judge and magistrate alleging discriminatory bail bond practices, sentencing, and jury fee practices.  The Supreme Court determined that no case or controversy existed for the reasons that the none of respondents claimed they suffered any injury in the manner specified, and the case or controversy requirement was not satisfied by general assertions that respondents would be prosecuted for violating valid criminal laws.

The Spencer's claim is strikingly similar.  They assert that if an African American appears to vote in the upcoming election, they *may* be in a precinct in which the presiding judge is a Republican, they *may* be challenged by a Republican Party Challenger, and they *may* be asked questions by the presiding judge, and *if all of this happens*, their right to vote may be denied, deterred, or delayed. Further, Plaintiffs' claim begins with a proposition of law that is simply wrong.  Plaintiffs assert that the Board has appointed a Republican presiding judge within their precinct under O.R.C. 3501.22.  Ohio law dictates that the Board "shall designate in each precinct on of the judges who is a member of the dominant party to serve as presiding judge." O.R.C. 3501.31.  The "dominant party" within a precinct is defined as "that political party whose candidate for election to the office of governor at the next preceding regular state election at which a governor was elected received more votes than any other person received for election to said office in such precinct at such election."  O.R.C. 3501.01(G).  Defendant Board expects the

evidence to show that in the 2002 election for governor in the State of Ohio, the Democratic candidate received the most votes within Cincinnati Ward 13, Precinct H, where Plaintiffs now claim to reside and will presumably be voting on November 2, 2004. [1]

For these reasons, Plaintiffs' claims of hypothetical intimidation by a Republican presiding judge are incorrect and they lack standing to bring this action.

b.    The Actions of the Board in Accepting Challenger Filings are not in Violation of Law.

While the Board and the judges within the precincts have great latitude in controlling the behavior of obstreperous challengers, O.R.C. 3501.33, the Board simply has no discretion on whether to accept or refuse challengers placed within the precincts by the party organizations. Any party organization supporting candidates to be voted on and any group of five candidates may appoint challengers to serve at any of the polling places within the county. O.R.C. 3505.21. The statute prohibits candidates, persons in uniform, and persons carrying firearms or other weapons from serving as challengers. *Id.* Challengers must file their name and address with the Board and notify the Board of the polling place that they intend to work. *Id.*

The reasons that voters may be challenged are specifically provided by law, dealing primarily with residency, age, and citizenship. O.R.C. 3505.20. Additionally, individuals may be challenged for impersonating an elector. O.R.C. 3505.22. O.R.C. 3505.20 delineates what should happen upon a challenge for reasons other than impersonating a voter. The directive of the Secretary and the procedure outlined by the Board for dealing with polling location challenges are both reasonable and lawful. The Secretary has the right and the responsibility to propound directives to the Board to assure an orderly election, O.R.C. 3501.05, and the Board

---

[1]    The actual vote totals within Cincinnati Ward 13, Precinct H reflect that the Democratic ticket of Hagen/Tavares received 117 votes to 28 for the Republican ticket of Taft/Bradley.

may develop its own policies and procedures to the extent that they are not inconsistent with such directives and the law.   O.R.C. 3501.11(E).  That is the only import of the directive of the Secretary and the policy of the Board as described in exhibits A and B now challenged by the Plaintiffs.   The fact that some entity, in this case allegedly the Republican Party of Hamilton County (but curiously - not the Democratic Party), might actually use the law, is simply not a matter which the Board can, or should control, unless the use actually results in a disruption of the process of the election.

      c.      Ohio's Challenger Statutes do not Violate the Voting Rights Act.

In order to remedy the historical disenfranchisement of certain minority groups, Congress passed the Voting Rights Act, 42 U.S.C. § 1973.  This Act prohibits any voting practice or procedure that results in "a denial or abridgement of the right of any citizen of the United States to vote on account of race or color…."  42 U.S.C. § 1973(a).  In order to show a violation of this Act, Plaintiffs must prove that they have been denied the right to vote on the basis of their race, based upon the totality of the circumstances.  *Id*., *See e.g., Johnson v. Florida*, 353  F.3d 1287, 1304 n. 22(11th Cir, 2003), *citing Farrakhan v. Washington*, 338 F.3d 1009, 1015 n.11 (9th Cir. 2003).    In deciding a vote denial claim, "a court must assess the impact of the contested structure or practice on minority electoral opportunities 'on the basis of objective factors.'" *Thornburg v. Gigles*, 478 U.S. 30, 44 (1986) *quoting* S. Rep. No. 97-417 at 27.

The central issue surrounding any § 2 Voting Rights Act Claim is that "a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gigles*, 478 U.S. 30, 47 (1986).   The intent of the Voting Rights Act is "to combat electoral structures and procedures that deprive minority voters of an opportunity to participate

effectively in the political process." *Southwest Voter Registration Education Project v. Shelley*, 278 F. Supp. 2d 1131, 1142 (C.D. Cal.) *aff'd* 344 F.3d 914 (9th Cir. 2003) (*en banc*).

In this matter, Plaintiffs offer no evidence that Ohio's statutory scheme has ever deprived minority voters of their ability to elect candidates of their choice.  Further, Plaintiffs have offered no proof that the challenger procedures combine with "social or historical conditions," to deprive African Americans of such opportunity.   Howard Tolley's declaration describes historical conditions in California, New Jersey, Louisiana, Georgia, Missouri, Pennsylvania, Michigan, Arkansas, Tennessee, Kentucky,  and Indiana.  He says nothing about Ohio in general or Hamilton County in particular.   Additionally, Tolley repeats the error of Plaintiffs in describing Plaintiffs presiding precinct judge as a Republican - casting considerable doubt on the validity of his conclusions.

Finally, Tolley is not - as he says - an independent expert.  He is currently a plaintiff in a lawsuit in the Northern District of Ohio, suing the very Board of Elections he now claims to be impartially considering.  [2]

---

[2]      *Stewart v. Blackwell,* case no. 5:02CV2028; USDC Northern District of Ohio Eastern Division (Akron).

d.      Principles of Federalism Preclude this Action

The Constitution establishes a system of dual sovereignty between the States and the Federal Government. *Gregory v. Ashcroft,* 501 U.S. 452, 457-459 (U.S., 1991)*, Tafflin v. Levitt,* 493 U.S. 455, 458, 107 L. Ed. 2d 887, 110 S. Ct. 792 (1990). The preservation of the States, and the maintenance of their governments, are as much within the design and care of the Constitution as the preservation of the Union and the maintenance of the National government. *Gregory v. Ashcroft,* 501 U.S. 452, 457-459 (U.S., 1991). Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign. *Id.*

The manner of regulating federal, state and local elections will has historically been left to the states. The Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections, *Oregon v. Mitchell,* 400 U.S. 112, 124-125, 27 L. Ed. 2d 272, 91 S. Ct. 260 (1970). "Each State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen." *Boyd v. Nebraska ex rel. Thayer,* 143 U.S. 135, 161, 36 L. Ed. 103, 12 S. Ct. 375 (1892).'

Ohio has crafted, and the Board follows a complex election code which describes in great detail the procedures for conducting elections. The code provides for bi-partisan supervision of elections intended to produce fair results. The challenger and witness provisions of those statutes are designed not to intimidate or deny any rights to eligible voters, but are designed to insure the integrity of the electoral process throughout the state and to produce confidence in the results of the individual contests. The statutes have been routinely used by both major political parties and have largely accomplished the intended goals. The court should not discard the entire system based upon the hypothetical musings of Plaintiffs that are based upon incorrect conclusions of law and the assignation of base motives to their political opponents.

e.      Incorporation by Reference

The Board incorporates by reference as if rewritten herein, the arguments of the other

defendants in this action to the extent that they apply to the allegations against it or defenses

asserted by the Board.

III.    CONCLUSION

For the reasons stated above, Plaintiffs Motion for a temporary restraining order are not

well taken and must be denied.


                                        MICHAEL K. ALLEN
                                        PROSECUTING ATTORNEY
                                        HAMILTON COUNTY, OHIO

                                        BY:

                                        _____
                                        David T. Stevenson, Ohio reg. 0030014
                                        Assistant Prosecuting Attorney
                                        Taft Law Center, Suite 4000
                                        230 East Ninth Street
                                        Cincinnati, Ohio 45202
                                        DDN:  (513) 946-3120
                                        FAX:   (513) 946-3018
                                        email:  dstevens@prosecutor.hamilton-
                                        co.org
                                        *TRIAL ATTORNEY FOR HAMILTON
                                        COUNTY BOARD OF ELECTIONS*

                        CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was had delivered to all counsel of
record and all unrepresented parties this 28 day of October, 2004.


                                        _____
                                        David T. Stevenson


-8-