IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Marian A. Spencer *et al.* | : | |
| | : | Case No. C-1-04-738 |
| Plaintiffs | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING |
| J. Kenneth Blackwell *et al.* | : | PLAINTIFFS' SECOND |
| | : | MOTION FOR PRELIMINARY |
| Defendants | : | INJUNCTION |

This matter comes before the Court on the Second Motion for Preliminary Injunction of Plaintiffs Donald and Marian Spencer and Plaintiff Charter Committee of Greater Cincinnati (doc. #42). The Court held a hearing on Plaintiffs' motion on April 27, 2005 and now **DENIES** their motion.

## I. FACTUAL BACKGROUND

Just prior to the November 2004 election, Plaintiffs Marian and Donald Spencer brought a challenge to Ohio Revised Code sections 3505.21 and 3505.20. Ohio Revised Code section 3505.21 allows political parties to appoint to any of the polling places in the county one qualified elector to serve as a challenger at the polling places. If a person is challenged, the presiding judge then swears in the person challenged and asks particular questions depending on the nature of the challenge. O.R.C. § 3505.20.

1

Anticipating a greater than usual number of challengers at that election, Defendant Secretary of State Kenneth Blackwell issued a memo outlining challenger and witness guidelines.  Blackwell's memo states that challengers may not unnecessarily delay the voting process, and if a challenger challenges so many voters that his actions slow down the voting process, the presiding judge should take immediate action, such as warning the challenger and then expelling him from the polling place.[1]  The memorandum also instructs that whenever possible, the presiding judge[2] shall move the challenged voter to an area ten feet from the polling area and ask the voter the relevant questions by administering form 10-U.[3]  The Hamilton County Board of Elections also issued a memo regarding challengers – its memo states that challengers must have a good faith basis for challenging a voter and may not blanket challenge or randomly challenge voters.

This Court granted Plaintiffs' motion for preliminary injunction on November 1, 2004. Defendants immediately appealed to the Sixth Circuit for a stay of that order pending appeal, which the Sixth Circuit granted.  See Summit County Democratic Cent. and Executive Comm. v. Blackwell, 388 F.3d 547 (6th Cir. 2004).  Judge Rogers, writing for the panel, stated that there was a significant question as to Plaintiffs' standing, but he assumed without deciding that

---

[1]Plaintiffs' ex. 7.

[2]Although Blackwell's memorandum seems to indicate that only the presiding judge is necessary in the process of moving the voter ten feet away and asking him or her relevant questions about his or her eligibility, section 3505.20 refers to the "*judges*" asking a voter the relevant questions.  It therefore seems clear that all election judges are required to administer the relevant questions to voters they suspect of ineligibility and all election judges are required to evaluate the response.

[3]10-U also states that "failing to answer any question fully or refusing to sign this form will result in the loss of your right to vote."  (Plaintiffs' ex. 7.)

2

Plaintiffs had standing, given the "nonspeculative possibility that at least some actual injury will occur, in the form of greater delay and inconvenience in voting."  <u>Summit County</u>, 388 F.3d at 550.  The Sixth Circuit held that Plaintiffs had not shown a substantial likelihood of success on the merits, stating that "[c]hallengers may only *initiate* an inquiry process by precinct judges. The lower court orders do not rely on the likelihood of success of plaintiffs' challenges to the procedure that will be used by precinct judges once a challenge has been made."  <u>Id.</u> at 551.  The Sixth Circuit dismissed the appeal, finding it moot and stating that further proceedings would take place in this Court.

Plaintiffs have now amended their complaint to address the precise procedure that the Sixth Circuit noted that this Court did not address: "the procedure that will be used by precinct judges once a challenge has been made."  <u>Id.</u> at 551.  Their second amended complaint challenges O.R.C. § 3505.20 and the regulations issued regarding the statute.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to grant a temporary restraining order or preliminary injunction.  When deciding whether to issue a preliminary injunction, the Court considers four factors: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction."  <u>Leary v. Daeschner</u>, 228 F.3d 729, 736 (6th Cir. 2000).  "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met."  <u>In re DeLorean Motor</u>

Co., 755 F.2d 1223, 1229 (6th Cir. 1985).  A district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are determinative of the issue.  Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 717 (6th Cir. 2002).


## III.    ANALYSIS

Plaintiffs argue that O.R.C. § 3505.20 deprives a voter of due process by severely burdening the right to vote.  Plaintiffs contend that O.R.C. § 3505.20 severely burdens the right to vote since a challenged voter's right to vote could be denied if he fails to fully answer any question the precinct judges deem necessary to test his qualification as a voter, and the precinct judges' decision is final.  Plaintiffs also argue that Defendant Blackwell requires voters to provide greater proof than is required by statute because a challenged voter must sign an affidavit or lose his vote, something not called for by statute.  Finally, Plaintiffs argue that the statute conflicts with the Help America Vote Act ("HAVA"), 42 U.S.C. § 15301 et seq., which requires provisional balloting in federal elections, and should be struck down under the supremacy clause.

### A.    Likelihood of Success on the Merits

#### 1.    Due Process  – The Questioning Process

Plaintiffs allege that voters are severely burdened by the fact that precinct judges can quiz voters about facts like age and residence that were already established when the voter was placed on the rolls.  Plaintiffs also allege that the right to vote is burdened because all precinct judges must question a challenged voter, completely stopping the voting process and causing delay.

Finally, Plaintiffs argue that the wide discretion afforded precinct judges in asking questions "necessary" to test a challenged voter's qualifications without giving the voter notice or an opportunity to be heard renders the statute unconstitutional.

Plaintiffs analyze the situation under Anderson v. Celebrezze, 460 U.S. 780, 789 (1983). Under Anderson, the Court conducts a balancing test between the severity of the burden and the importance of the State's interests:

> [The Court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

Anderson, 460 U.S. at 789.  If an election regulation imposes a "severe" burden, the State regulation must be narrowly drawn to serve a compelling state interest.   Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358-60 (1997).  If the regulation imposes a lesser burden, however, the State regulation must be justified only by important state regulatory interests.  Id.; Burdick v. Takushi, 504 U.S. 428, 433 (1992).  Plaintiffs argue that the burden in this case is severe because the burden is the loss of the voter's right to vote.  Plaintiffs point to no example, however, of someone who was in fact eligible to vote whose right to vote was revoked pursuant to O.R.C. § 3505.20.

The other burden described is that of  being subjected to any such questions necessary to test the person's qualifications to vote and of being required to submit an affidavit regarding their qualifications if challenged.  Judge Debevoise addressed a similar concern in Vargas v.

Calabrese, 634 F. Supp. 910, 929 (D. N.J. 1986).  Judge Debevoise held that since precinct judges couldn't ask just any question but only, as here, questions necessary to test the person's qualifications to vote, the plaintiffs could not succeed under Anderson.  Judge Debevoise concluded that necessary questions can relate only to grounds for voter ineligibility put forth in the statute – citizenship, residency, or age.  This Court finds such a conclusion to be a logical interpretation of the Ohio statute as well.  The statute provides for challenges on three different grounds  – citizenship, residency, and age, and provides specific questions for those categories. It then states that the presiding judge "shall put such other questions to the person challenged under respective heads designated by this section as are necessary to test the person's qualifications as an elector at the election."  O.R.C. § 3505.20.  Since the headings designated in the section pertain only to citizenship, residency, and age, it is reasonable to conclude that the "necessary questions" contemplated by the statute relate only to those headings.

Plaintiffs also protest the use of the Form 10-U affidavit in the challenge process.  The Form 10-U affidavit that a challenged voter must sign does not restrict a challenged voter any more than the procedure outlined in O.R.C. § 3505.20.  While the statute does not require an affidavit, it does require the person to answer questions under oath, the functional equivalent of signing an affidavit.  Plaintiffs have therefore not shown that the use of the affidavit poses any due process problem.

While the magnitude of the burden of having one's properly registered right to vote revoked is great, there is no evidence that it has happened here or will happen in May's primary. In Vargas, the loss of the vote occurred only after the election law itself was violated, and here there is no such allegation.  As to the State's interests, Judge Debevoise rightfully held that the

state has a great interest in preventing voter fraud and that the precinct judges need flexibility in crafting the questions to ask to test someone's voting qualifications. <u>Vargas</u>, 634 F. Supp. at 929. Ohio's interest in preventing election fraud and assuring that only properly eligible voters cast actual ballots is equally important. O.R.C. § 3505.20 serves that interest.

Finally, Plaintiffs refer to a due process violation by implying that under the questioning process set forth in O.R.C. § 3505.20, a person's right to vote can be revoked without notice or opportunity to be heard. Plaintiffs did not put forth a thorough due process analysis in their motion nor at the hearing. Notwithstanding, the statute itself provides notice of the challenge procedure and the grounds on which a voter can be challenged, and the question and answer process set forth in O.R.C. § 3505.20 certainly provides some opportunity to be heard before a voter is deemed ineligible. Plaintiffs have not offered any suggestion of what process is, in fact, due under these circumstance in place of the one set forth in the statute.

Under the facts presented in the motion for preliminary injunction and at the preliminary injunction hearing, Plaintiffs have failed to show a strong likelihood of success on the merits of their constitutional claims.

## 2. HAVA

Plaintiffs contend that O.R.C. § 3505.20's instruction that precinct judges shall refuse a challenged voter a ballot if he fails to fully or sufficiently answer a precinct judge's questions, directly contradicts the Help America Vote Act ("HAVA"), 42 U.S.C. § 15301 <u>et seq</u>. HAVA directs that when an individual is eligible to vote for federal office but an election official asserts that the voter is not eligible, the person shall be given a provisional ballot. 42 U.S.C. § 15482. This Court held in the first <u>Spencer</u> order that "[t]his part of section 3505.20 conflicts with, and

is thus superceded by, federal law because the Help America Vote Act ("HAVA"), 42 U.S.C. §
15301 et seq. requires election officials to give a provisional ballot to any voter whose name
does not appear on the rolls or whom an election official believes would be ineligible to vote."
Spencer v. Blackwell, 347 F. Supp. 2d 528, 531 (S.D. Ohio 2004).  Plaintiffs allow that none of
the special, primary, or general elections currently scheduled to take place in Hamilton County in
2005 are federal elections.  Plaintiffs have therefore, at this time,  failed to show any likelihood
of success under HAVA.

### 3.     National Voter Registration Act

In their second amended complaint, Plaintiffs allege that Defendants have violated
Plaintiffs' rights under the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg.
This claim was not mentioned in their motion for preliminary injunction nor expanded upon at
the April 27 hearing.  Plaintiffs have therefore, at this time, failed to show any likelihood of
success on the merits of an NVRA claim.

### B.     Irreparable Harm

Plaintiffs have failed to show that irreparable harm occurred in the November 2004
election due to the procedures set forth in O.R.C. § 3505.20 or that irreparable harm will result if
such procedures are not enjoined.  Plaintiffs produced no evidence at the hearing that any
eligible voter was wrongfully denied a ballot under O.R.C. § 3505.20 in the November 2004
election or that such a voter would be denied a ballot in any future election.

### IV.    CONCLUSION

Because Plaintiffs have failed to establish a likelihood of success on the merits of their

claims and have not shown that any irreparable injury has resulted or will result from the procedures set forth in O.R.C. § 3505.20, their Second Motion for Preliminary Injunction is **DENIED**.

      IT IS SO ORDERED.

                                                      \_\_\_s/Susan J. Dlott_____
                                                      Susan J. Dlott
                                                      United States District Judge